OPINION
{¶ 1} Plaintiffs-appellants, Margaret L. Blake, Scott Blake, Amanda Blake, and Cody Blake,[1] appeal a decision of the Columbiana County Common Pleas Court granting summary judgment in a declaratory judgment action in favor of defendant-appellee, First Financial Insurance Company ("FFIC"). The court held that a commercial general liability ("CGL") policy issued by FFIC was not a motor vehicle liability policy and, thus, FFIC was not required to offer uninsured/underinsured motorists ("UM/UIM") coverage pursuant R.C. 3937.18.
 {¶ 2} On January 12, 2000, plaintiff-appellant, Margaret L. Blake ("Margaret"), sustained personal injuries in a motor vehicle accident caused by the negligence of Dawn L. Alexander ("Alexander"). At the time of the accident, Margaret was driving a vehicle owned by her husband, plaintiff-appellant Scott Blake ("Scott"), and was not acting within the scope of her employment. The tortfeasor, Alexander, had an automobile liability policy with Progressive Insurance Company ("Progressive") with a per person limit of $100,000. Progressive paid the Blakes the limit of $100,000 in full settlement.
 {¶ 3} Having exhausted the limits of the tortfeasor's liability coverage, Margaret made a claim in this declaratory judgment action against FFIC seeking UIM coverage. Scott, Amanda, and Cody advanced claims based on loss of consortium. FFIC insured Paula J. Moore d.b.a. Moore Care ("Moore Care") under a CGL policy. The Blakes premised their claim against FFIC upon the Ohio Supreme Court's decisions in Selanderv. Erie Ins. Group, 85 Ohio St.3d 541, 1999-Ohio-287, 709 N.E.2d 1161, and Scott-Pontzer v. Liberty Mut. Fire Ins. Co., 85 Ohio St.3d 660,1999-Ohio-292, 710 N.E.2d 1116.
 {¶ 4} The parties subsequently filed cross motions for summary judgment. The trial court granted FFIC's motion and denied the Blake's. This appeal followed.
 {¶ 5} The Blakes' sole assignment of error states:
 {¶ 6} "The Trial Court Erred In Granting The Appellee's Motion For Summary Judgment And In Denying The Appellant's Motion For Summary Judgment, To Appellant's Prejudice."
STANDARD OF REVIEW
 {¶ 7} A declaratory judgment action allows a court of record to declare the rights, status, and other legal relations of the parties. Civ.R. 57 and R.C. 2721.01 et seq. Such an action is an appropriate mechanism for establishing the obligations of an insurer in a controversy between it and its insured as to the fact or extent of liability under a policy. Lessak v. Metropolitan Cas. Ins. Co. of N.Y. (1958),168 Ohio St. 153, 155, 5 O.O.2d 442, 151 N.E.2d 730. When a declaratory judgment action is disposed of by summary judgment our review of the trial court's resolution of legal issues is de novo. King v. WesternReserve Group (1997), 125 Ohio App.3d 1, 5, 707 N.E.2d 947. Hence, summary judgment is proper when: "(1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party."Welco Industries, Inc. v. Applied Cos. (1993), 67 Ohio St.3d 344, 346,617 N.E.2d 1129.
R.C. 3937.18
 {¶ 8} R.C. 3937.18 governs the provision of uninsured and underinsured motorist (UM/UIM) coverage. The statute has undergone numerous revisions in recent years. Prior to the most recent revision, R.C. 3937.18 required an insurer to offer UM/UIM coverage whenever an automobile liability or motor vehicle liability policy of insurance was issued. If UM/UIM coverage was not offered, it became part of the policy by operation of law. Davidson v. Motorists Mut. Ins. Co. (2001),91 Ohio St.3d 262, 264, 744 N.E.2d 713. Since there have been numerous changes in recent years to the statutes governing UM/UIM coverage and the case law interpreting those statutes, the applicable policy period and the applicable version of R.C. 3937.18 must first be determined.
 {¶ 9} "For the purpose of determining the scope of coverage of an underinsured motorist claim, the statutory law in effect at the time of entering into a contract for automobile liability insurance controls the rights and duties of the contracting parties." Ross v. Farmers Ins. Groupof Cos. (1998), 82 Ohio St.3d 281, 695 N.E.2d 732, syllabus. Here, the CGL policy was first issued on April 7, 1997, and was renewed on April 7, 1998, and April 7, 1999. The accident occurred on January 12, 2000, bringing it within the policy period of April 7, 1999 to April 7, 2000. Therefore, the version of R.C. 3937.18 that controls this case was that enacted by Am.Sub.H.B. No. 261, which became effective September 3, 1997.
 Selander {¶ 10} In Selander v. Erie Ins. Group (1999), 85 Ohio St.3d 541,709 N.E.2d 1161, the Ohio Supreme Court examined whether a general business liability policy issued to a partnership qualified as an automobile liability or motor vehicle policy under R.C. 3937.18 thereby requiring it to offer UM/UIM coverage. The policy generally excluded coverage for automobiles. However, the policy included an "Extension of Coverage" section that provided some automobile liability coverage for claims of vicarious liability arising from the use of unspecified hired or nonowned vehicles used in the course of business. Since the policy provided some liability coverage in limited circumstances, the court held that UM/UIM must be provided. Id. at 544-545.
 Post-Selander {¶ 11} Subsequent to Selander, R.C. 3937.18 was amended to apply only to umbrella policies or policies that serve as proof of financial responsibility. Former R.C. 3937.18(L) provided:
 {¶ 12} "As used in this section, `automobile liability or motor vehicle liability policy of insurance' means either of the following:
 {¶ 13} "(1) Any policy of insurance that serves as proof of financial responsibility, as proof of financial responsibility is defined by division (K) of section 4509.01 of the Revised Code, for owners or operators of the motor vehicles specifically identified in the policy of insurance;
 {¶ 14} "(2) Any umbrella liability policy of insurance."
 {¶ 15} "Proof of financial responsibility" is defined in R.C.4509.01(K) as "proof of ability to respond to damages [in specified amounts] for liability, on account of accidents occurring subsequent to the effective date of such proof, arising out of the ownership, maintenance, or use of the motor vehicle."
 {¶ 16} Since the Am.Sub.H.B. No. 261 version of R.C. 3937.18
applies to the policy involved here, the Blakes' reliance on Selander is misplaced, as Am.Sub.H.B. No. 261 superseded Selander and its progeny. A review of the CGL policy issued by FFIC reveals that it is neither an umbrella policy nor a policy that is to serve as proof of financial responsibility. Additionally, the policy expressly excludes liability coverage for injuries arising from the use of motor vehicles.
 {¶ 17} The Blakes argue that the CGL policy issued by FFIC is an "automobile or motor vehicle liability policy of insurance" by virtue of the coverage it provides for "parking autos" and "mobile equipment." The policy language upon which the Blakes rely provides, in pertinent part:
 {¶ 18} "SECTION I — COVERAGES
 {¶ 19} "* * *
 {¶ 20} "2. Exclusions
 {¶ 21} "This insurance does not apply to:
 {¶ 22} "* * *
 {¶ 23} "g. Aircraft, Auto or Watercraft
 {¶ 24} "`Bodily injury' or `property damage' arising out of the ownership, maintenance, use or entrustment to others of any aircraft, `auto' or watercraft owned or operated by or rented or loaned to any insured. * * *
 {¶ 25} "This exclusion does not apply to:
 {¶ 26} "* * *
 {¶ 27} "(3) Parking an `auto' on, or on the ways next to, premises you own or rent, provided the `auto' is not owned by or rented or loaned to you or the insured[.]
 {¶ 28} "* * *
 {¶ 29} "SECTION II — WHO IS AN INSURED
 {¶ 30} "* * *
 {¶ 31} "3. With respect to `mobile equipment' registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. * * *
 {¶ 32} "* * *
 {¶ 33} "SECTION V — DEFINITIONS
 {¶ 34} "* * *
 {¶ 35} "11. `Mobile equipment' means any of the following types of land vehicles, including any attached machinery or equipment:
 {¶ 36} "a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;
 {¶ 37} "b. Vehicles maintained for use solely on or next to premises you own or rent;
 {¶ 38} "c. Vehicles that travel on crawler treads;
 {¶ 39} "d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:
 {¶ 40} "(1) Power cranes, shovels, loaders, diggers or drills; or
 {¶ 41} "(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;
 {¶ 42} "e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:
 {¶ 43} "(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or
 {¶ 44} "(2) Cherry pickers and similar devices used to raise or lower workers;
 {¶ 45} "f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.
 {¶ 46} "However, self-propelled vehicles with the following types of permanently attached equipment are not `mobile equipment' but will be considered `autos':
 {¶ 47} "(1) Equipment designed primarily for:
 {¶ 48} "(a) Snow removal;
 {¶ 49} "(b) Road maintenance, but not construction or resurfacing; or
 {¶ 50} "(c) Street cleaning;
 {¶ 51} "(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and
 {¶ 52} "(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment." (Form CG 00 01 01 96, pp. 1, 3, 6, 9, and 10 of 11.)
 {¶ 53} The "parking autos" and "mobile equipment" coverage highlighted by the Blakes is merely incidental coverage and does not convert the policy into an automobile liability or motor vehicle policy. Again, the policy expressly excludes liability coverage for injuries arising from the use of motor vehicles. The "parking autos" exception language provides coverage for parking of automobiles on or next to premises owned or rented by the insured only if those automobiles are not owned by, or rented or loaned to the insured. Under former R.C.3937.18(L)(1), an automobile or motor vehicle liability policy of insurance is one that serves as proof of financial responsibility forowners or operators of the motor vehicles specifically identified in thepolicy. Even if it were assumed that the specifically identified vehicles were those automobiles, not owned by the insured, that are parked on or next to the insured's premises, the commercial policy would not serve as proof of financial responsibility for the owners/operators of those motor vehicles. The limited circumstances under which coverage is extended to the use of motor vehicles do not involve motor vehicles owned, used or operated by Moore Care and/or its employees. Rather, the coverage applied only to automobiles not owned by, or rented or loaned to Moore Care and its employees/insureds. This policy would not serve as proof of financial responsibility for the persons who operate the vehicles specifically identified in the policy, i.e., those automobiles, not owned by the insured, that are parked on or next to the insured's premises. In addition, "mobile equipment," as defined in the policy, refers to a limited class of equipment and vehicles not primarily designed to transport people on public roads. Therefore, such coverage does not convert the policy to an "automobile or motor vehicle liability" policy requiring UIM coverage to be offered." Other appellate districts are in accord. See Bowling v. St. Paul Fire Marine Ins. Co.,149 Ohio App.3d 290, 2002-Ohio-4933, 776 N.E.2d 1175; Allen v.Transportation Ins. Co., 10th Dist. No. 02AP-49, 2002-Ohio-6449; Lane v.State Auto Ins. Co., 2d Dist. No. 2002-CA-10, 2002-Ohio-5128; Reffitt v.State Auto. Mut. Ins. Co., 3d Dist. No. 1-02-38, 2002-Ohio-4885;Gilcreast-Hill v. Ohio Farmers Ins. Co., 9th Dist. No. 20983,2002-Ohio-4524; Devore v. Richmond, 6th Dist. No. WD-01-044,2002-Ohio-3965; Pickett v. Ohio Farmers Ins. Co., 5th Dist Nos. 2001CA00227 2001CA00236, 2002-Ohio-259. See, also, Dolly v. OldRepublic Ins. Co. (N.D.Ohio. 2002), 200 F. Supp.2d 823.
 {¶ 54} Since FFIC's CGL policy is not an "automobile liability or motor vehicle liability policy of insurance" within amended R.C. 3937.18, FFIC was not required to offer UIM coverage as part of the policy. Consequently, such coverage does not arise by operation of law because of any failure to offer such coverage when the policy was issued.
 {¶ 55} Accordingly, the Blakes' sole assignment of error is without merit.
 {¶ 56} The judgment of the trial court is hereby affirmed.
Waite and DeGenaro, JJ., concur.
[1] Margaret L. Blake and Scott Blake are wife and husband, and Amanda Blake and Cody Blake are their two minor children.